UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEROME MONVILLE,

        Plaintiff,

v.                                                                         Case Number 07-11413-BC
                                                                        Honorable Thomas L. Ludington

FEDEX FREIGHT EAST, INC.,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING PLAINTIFF'S COUNTS I AND II WITH PREJUDICE**

        Plaintiff Jerome Monville filed suit against his former employer, Defendant FedEx Freight East, Inc., asserting three claims: (1) violation of ELCRA, based on age discrimination; (2) violation of the PWDCRA; and (3) retaliation against him for filing a worker's compensation claim. Now pending before the Court is Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56.

        The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I.

        Plaintiff worked as a local delivery driver for Defendant. On December 6, 2006, according to his deposition, Plaintiff fell off the back of his truck after ice formed on the bumper while he unloaded boxes. He states that he slipped on the ice and fell to the ground. He represents that he

grabbed at boxes for support, which instead fell on top of him. In his complaint, he reports that he suffered injuries to his lower head, back, right shoulder, and left knee. He filed a worker's compensation claim that same day.

In his deposition he described the extent of his injuries. Regarding his head, he stated that he had "just a bruise," that the pain went away, and that he had no head injury with any ongoing effect. *Monville Dep.*, pp. 244-45; Dft. Br., Ex. Monville [dkt #17-22]. Regarding his shoulder, he maintains that, apart from a five-day period after the incident and time to recover from surgery, his surgery has not affected his ability to work as a semi-truck driver. *Id.* at 247. Regarding his back, doctors told him that he had bruised his right lumbar. He had restrictions on sitting or standing beyond certain periods of time and on the weight he could carry, but those restrictions lasted only for the five-day period that he did not work. *Id.* at 245-46. Regarding his leg, he had a contusion, but, other than being sore a week later, that injury did not stop him from doing his job. *Id.* at 245.

According to his deposition, he took time off (three paid vacation days and two unpaid days) after his injury. The doctor who examined him for worker's compensation purposes concluded that he had contusions to his spine and knee and a strain in his shoulder. The doctor released him to light duty work on December 11, 2006 and to regular work as of December 13, 2006. Plaintiff then returned to work on December 13, 2006.

Plaintiff's co-worker, Leonard Smolarkiewiez, born on in 1953, shared a truck with him. He used the truck on December 14, 2006, after Plaintiff had used it. Plaintiff completed a vehicle investigation report (VIR) after his use and indicated no damage to the truck. The following day, the co-worker used the same truck on the night shift. His pre-trip inspection revealed damage to the front bumper, although he completed his pre-trip inspection paperwork after completing his route.

He alerted their manager, Randy Hoppa, that morning, after he completed his shift.

The manager reviewed the circumstance, locating a piece of bumper in a snowbank in Defendant's lot that matched what was missing on the truck. He then asked Plaintiff if he had anything to report from the previous night, but Plaintiff indicated that he did not. The manager and Plaintiff together inspected the truck and observed the bumper and the piece of the bumper in the snow. Plaintiff allegedly expressed surprise. In a statement written that day, on December 15, 2006, Plaintiff informed his manager that he did not observe any damage to the truck in his post-trip inspection. Although his manager requested it, Plaintiff refused to complete a VIR, stating that he would not fill it out because he did not know anything about it. *Hoppa Dep.*, pp. 9-10; Dft. Br., Ex. Hoppa [dkt #17-25].

In contrast to the manager, who maintains that Plaintiff did not volunteer any information about hitting a snowbank, Plaintiff claims that he did tell his manager that he hit a snowbank. While Plaintiff insists that he did not cause any damage to the truck, he also states in his deposition that he did tell his manager about driving into the snowbank.

At the directive of the division human resources manager, John Ravenelle, Plaintiff was placed on leave pending an investigation into the incident. The human resources manager then interviewed Plaintiff, who acknowledged that he had hit a snowbank and heard a crunching noise. At the human resource manager's suggestion, Plaintiff then completed an accident report consistent with this account. On December 20, 2006, Plaintiff also provided a statement detailing his actions around the time of the incident, including his inspection of the bumper directly after hitting the snowbank, his conclusion that he had not caused any damage, and his awareness on the following day that he had. In the statement, he acknowledged that he damaged the vehicle and that he had not

handled the situation properly. *Pl. Statement of Dec. 20, 2006*; Dft. Br., Ex. 8, p. 189 [dkt #17-10]. In his deposition, however, Plaintiff stated that he completed the form in this manner merely to protect his job. He felt that he knew what Defendant's representatives wanted to hear, so he complied, hoping that the progressive discipline policy would avert major disciplinary action. *Pl. Dep.*, p. 178.

According to the depositions of Plaintiff's manager and the human resources manager, on December 20, 2006, they decided to end his employment because he failed to report an accident and because of his dishonesty. Prior to that date, Defendant had had no accidents for six years, and his manager could not recall any particular disciplinary events.

Both stated that Defendant's employee handbook authorized termination of employment for failure to report an accident. This comports with the handbook, which expressly states that Defendant's progressive corrective action policy does not apply to accidents, attendance, injuries, and traffic violations. The handbook further lists "the most serious and willful offenses not subject to progressive action," which may be sufficient for removal from service. *Dft. Employee Handbook*, p. 30; Dft. Br., Ex. 9 [dkt #17-12]. These include "dishonesty, providing false or misleading information" and "failure to report an accident." *Id*. at p. 31.

In his complaint, Plaintiff also stated that he had suffered an unrelated injury in 2005. Although Plaintiff does not alert the Court to the specifics, he maintains that he had six months off for short-term disability. He had reconstructive shoulder surgery.

According to Defendant's representations, other employees have reported injuries at work, but they have not received different treatment than did Plaintiff. These employees include Scott Colpean, born in 1955; Christine Centek, born in 1963; Chris Carauna, born in 1964; and Brian

Nalevayko, born in 1964. Plaintiff was born in 1954 and was 52 at the time of the alleged events.

Defendant maintains that Centek suffered a similar injury to that of Plaintiff and that she has subsequently handled Plaintiff's former route. Defendant states that she has since gone on leave but that she remains employed there.

Colpean had two accidents that resulted in damage to property or a vehicle. In the first, he backed a truck into a school's basketball backboard, and the principal contacted Defendant about it before Colpean reported it at the end of his route. Colpean represented that he stopped and provided all his information to the principal before he left. He informed his supervisor of the circumstance when questioned about it, within hours of its occurrence. As to the second accident, he damaged another vehicle when he had to maneuver a trailer to extract a dolly lodged beneath the vehicle he was driving. He states that he did not notice a broken taillight but that he completed an accident report when a subsequent driver brought it to his attention the following day. His employment was not terminated.

On March 20, 2007, Carauna transferred from Florida to work as a driver in the Midland location. He was then age 43.

On February 21, 2005, Defendant hired Plaintiff's son, Jerome Monville, Jr., as a supplemental dock worker. On April 2, 2007, the son entered Defendant's driver apprentice program. On July 30, 2007, he became a full-time local driver.

On April 2, 2007, Plaintiff filed suit against Defendant. As stated in the introduction, Plaintiff advances three claims against Defendant: (1) violation of ELCRA, based on age discrimination; (2) violation of the PWDCRA; and (3) retaliation against him for filing a worker's compensation claim.

II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not

"rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must do more than simply show that there is some "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (citations and internal quotations omitted).

### III.

### A.

Regarding Plaintiff's first claim, Mich. Comp. Laws § 37.1102(b) bars employment discrimination based on disability. More specifically, Mich. Comp. Laws § 37.1202(1)(b) bars employers from "[d]ischarg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position."

As defined in Mich. Comp. Laws § 37.1103(d), in relevant part, "disability" means one or more of the following:

> (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder,

if the characteristic:

 (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

* * *

 (ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

 (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

To prove a *prima facie* case under the PWDCRA, "the plaintiff must show (1) that he [has a disability] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Chiemelewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998) (citation omitted); *Peden v. City of Detroit Police Dep't*, 680 N.W.2d 857, 862 (Mich. 2004). Then the burden shifts to the defendant to respond with a legitimate, non-discriminatory reason for its employment decision. *Kerns v. Dura Mechanical Components, Inc. (On Remand)*, 618 N.W.2d 56, 62 (Mich. Ct. App. 2000).

As to perceived impairments under Mich. Comp. Laws § 37.1103(d), "[r]egardless of whether [a] plaintiff was actually disabled within the meaning of the PWDCRA, and even if [a] plaintiff no longer had any impairment at all at the time of the alleged discriminatory conduct, [a] defendant could be found to have violated subsection 103d of the PWDCRA if it discriminated against [a] plaintiff on the basis of a perceived disability." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 408 (Mich. Ct. App. 1999). Providing evidence of a perceived impairment does not ease a plaintiff's case, because a plaintiff must still show that the employer perceived the plaintiff as disabled within the meaning of the PWDCRA. *Id.* In *Michalski v. Bar-Levav*, 625 N.W.2d 754, 760 (Mich. 2001), the Michigan Supreme Court noted that, as to cases involving either an actual

disability or a perceived disability under Mich. Comp. Laws § 37.1103(d)(iii), the inquiry must focus on the alleged impairment (or perceived impairment) as of the time of the employment decision.

Plaintiff has offered no evidence that he was "substantially limit[ed in performing] one or more of the major life activities." Although working is included within major life activities, Plaintiff has not cited to any record support to suggest that he could not work. Indeed, he returned to work one week after he suffered his injuries. Contrary to Plaintiff's assertions in his brief, his deposition repeatedly shows that his injuries did not affect his ability to work. He stated that the pain in his head went away, that the injury to his shoulder did not affect his ability to work as a driver, that the need for restrictions for his back lasted only five days, and that the injury to his leg did not stop him from doing his job. Plaintiff also refers to a previous injury to his shoulder and accompanying leave time, but he offers no evidence that that earlier injury in any way compromised his ability to work. Plaintiff further refers to a possible perception of disability, but he similarly offers no evidence to support the conclusion that Defendant regarded him as having a disability, particularly where any the statutory definition requires a showing that Defendant perceived him as unable to perform a major life activity. Given that Plaintiff returned to work seven days after his injury – without any medical restrictions – he has offered no basis for concluding that Defendant perceived him as disabled. Consequently, the Court will dismiss Plaintiff's PWDCRA claim.

B.

Regarding Plaintiff's second claim, ELCRA provides that "[a]n employer shall not . . . discharge . . . an individual with respect to employment . . . because of . . . age. . . ." Mich. Comp. Laws § 37.2202(a)(1). By not advancing any evidence of express age discrimination, such as a

comment from a manager about Plaintiff's age, the parties appear to concede that this case does not involve direct evidence of age discrimination.

Accordingly, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to this indirect evidence case. *Sniecinski v. Blue Cross & Blue Shield*, 666 N.W.2d 186, 193 (Mich. 2003). This same test applies to age discrimination. *Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64, 68 (Mich. 1997) (footnote omitted). An indirect evidence case requires that a plaintiff must first establish a *prima facie* case of discrimination: "that (1) [he] belongs to a protected class, (2) [he] suffered an adverse employment action, (3) [he] was qualified for the position, and (4) [his] failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski*, 666 N.W.2d at 193 (citations omitted). Then the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its employment action. *Id*. (citations omitted). Finally, the burden returns to the plaintiff to show that the proffered reason is mere pretext for discrimination. *Id*. (citations omitted).

As to the *prima facie* case, age discrimination claims can be based on theories of either disparate treatment or disparate impact. "[D]isparate treatment . . . requires a showing of either a pattern of intentional discrimination against protected employees . . . , and disparate impact . . . requires a showing that an otherwise facially neutral employment policy has a discriminatory effect on members of a protected class." *Lytle v. Malady*, 458 Mich. 153, 177 n.26; 579 N.W.2d 906 (Mich. 1998) (citations omitted). Here, Plaintiff has not identified any employment policy, so the focus must remain on a disparate treatment theory. Disparate treatment can thus establish the fourth element of an ELCRA age discrimination claim, as can a showing that an older employee was replaced by a younger employee. *Id*. at 177. Additionally, disparate treatment requires a showing

that an employer treated an employee "differently than persons of a different class for the same or similar conduct." *Barnell v. Taubman Co., Inc.*, 512 N.W.2d 13, 19 (Mich. Ct. App. 1993) (citation omitted).

Although Plaintiff has not proffered evidence to support a disparate impact theory, he has made out a *prima facie* case by raising a question whether a younger employee replaced him. Plaintiff's son, then age 24, did work for Defendant. Yet Plaintiff raises no issue of fact regarding when his son became a driver for Defendant – seven months after the end of Plaintiff's employment. Still, Defendant did assign a 43-year-old employee, Centek, to assume the responsibility for Plaintiff's former route. Moreover, the next employee to join Defendant at its Midland location was age 42, Caruana. Despite the difference of only ten years or less between Plaintiff and those who replaced him, Michigan law, as articulated in *Lytle*, allows replacement by a person of younger age to suffice to show a *prima facie* case of age discrimination. As correctly argued by Plaintiff, ELCRA contains no age-based restriction similar to that seen in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § § 621 *et seq.*, which forecloses the possibility of discrimination if the other employees are 40 years or older. *See Winter v. Fitness USA Health Spas Corp.*, Unpublished Docket No. 188648; 1999 Mich. App. LEXIS 2668 (Mich. Ct. App. 1999) (citations omitted).

As to a theory of disparate treatment, Plaintiff cites to almost no similarly situated employees, apart from Colpean. Yet Colpean's prompt acknowledgment to Defendant's customer and to Defendant that he hit a basketball backboard differentiates his circumstance from that of Plaintiff. Regardless of the insufficiency of the disparate treatment theory, however, Plaintiff has at least raised issues of fact regarding whether younger employees, such as Centek and Caruana,

replaced him. Thus, Plaintiff has established a *prima facie* case of age discrimination under ELCRA.

Defendant, however, offers two legitimate, non-discriminatory reasons for ending Plaintiff's employment. Defendant cites to its employee handbook, which describes how both failure to report an accident and dishonesty can provide grounds for termination of employment. Indeed, the handbook expressly notes that such conduct is removed from the progressive discipline policy.

Defendant cites to its investigation into the situation that resulted in damage to the bumper of one of its trucks. Defendant identifies two different statements provided by Plaintiff, one from December 15, 2006 and one from December 20, 2006. In the first statement, Plaintiff describes the circumstance, but he makes no reference to backing into a snowbank. In the second statement, he admits that he hit a snowbank but states that he detected no damage. Yet he there acknowledges that he did cause the damage to the truck. His manager maintains that, during the initial investigation, Plaintiff never admitted that he caused the damage. To the human resources manager, however, Plaintiff did admit it. Yet in his deposition, Plaintiff insists that he did tell his manager about hitting the snowbank and that he wrote the second statement only for pragmatic reasons at the invitation of the human resources manager, and not because it was true.

Even if Plaintiff's competing representations created an issue of fact (and certainly some of his representations contradict those of Defendant's managers), Defendant still has provided legitimate, non-discriminatory reasons for ending his employment – dishonesty and failure to report an accident. As Defendant's employee handbook expressly includes "misleading" statements in its definition of dishonesty, the contrast between Plaintiff's two statements about the incident allow for an inference of dishonesty. Further, if Defendant accepted as true Plaintiff's second statement, then

he did not report an accident, either immediately or in the days shortly thereafter. That he finally did so almost a week later does not obviate the fact that he did not for several preceding days. Consequently, Defendant has offered legitimate, non-discriminatory reasons for ending Plaintiff's employment.

Finally, Plaintiff seeks to rebut this business judgment with an assertion that these reasons are pretextual. Regarding pretext, a plaintiff can show that a defendant's proffered non-discriminatory reasons are but a pretext "by showing the reasons had no basis in fact, . . . if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or . . . if they were factors, by showing that they were jointly insufficient to justify the decision." *Dubey v. Stroh Brewery, Inc.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990). Also, a plaintiff cannot challenge the soundness of a business judgment to demonstrate pretext. *Id*. Importantly, a plaintiff's "replacement by a younger employee, without more, is insufficient to support a claim of age discrimination," when offered to show pretext as a rebuttal to a defendant's legitimate, non-discriminatory reasons for discharge. *Barnell*, 512 N.W.2d at 15 (citation omitted).

Here, Plaintiff has not shown that the decision to end his employment has no basis in fact. Although he now testifies that his second statement resulted from purported duress, the contrast between the first and second statements supports a conclusion that he was dishonest with Defendant. Similarly, as to Defendant's contention that Plaintiff failed to report an accident, in light of his second statement in which he acknowledges that he caused the damage to the vehicle and handled it "the wrong way," Defendant could conclude that Plaintiff, in fact, did not report an accident. That he now testifies that his second statement to Defendant was inaccurate does not allow him to later challenge Defendant's business judgment on the information available to it at the time. Plaintiff

himself appears to acknowledge both dishonesty and a failure to report in that second statement, so any subsequently created "issue of fact" does not alter the legitimacy of the business judgment reached at the time. Accordingly, Plaintiff has not shown that Defendant's reasons were pretextual, and his general contention that Defendant remembered his previous six month leave period against him is unsubstantiated. Consequently, the Court will dismiss Plaintiff's ELCRA claim of age discrimination.

C.

Regarding Plaintiff's third claim, Michigan does not permit employers to discharge employees for exercising a well-established right provided by its legislature, in addition to express statutory bars to discharge under certain circumstances. *See Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982); *see also Phillips v. Butterball Farms, Inc.*, 531 N.W.2d 144, 146, 150 (Mich. 1995). Plaintiff asserts that this case involves one such express statutory bar, the WDCA's prohibition on terminating an employee in retaliation for filing a worker's compensation claim.

> Mich. Comp. Laws § 418.301(11) provides:
>
> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

A plaintiff must show the following elements to establish a claim of retaliatory discharge:

> 1. he asserted his right to workers' compensation benefits;
> 2. the defendant knew that plaintiff asserted his right to workers' compensation benefits;
> 3. the plaintiff suffered an adverse employment action; and
> 4. there was a causal connection between the plaintiff's assertion of his right to workers' compensation benefits and the adverse employment action.

*Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822 (E.D. Mich. 2002) (relying on *Chiles*

*v. Machine Shop, Inc.*, 606 N.W.2d 398, 404 (Mich. Ct. App. 1999)).

A plaintiff bears the burden to show the "causal connection" between the protected activity, such as a claiming worker's compensation benefits, and an adverse employment action. *Chiles*, 606 N.W.2d at 404. That burden includes showing that the filing of a claim was a "significant factor" in an employer's decision to discharge an employee. *Goins v. Ford Motor Co.*, 347 N.W.2d 184, 191 (Mich. Ct. App. 1983). Additionally, at least in the context of discrimination-based retaliation, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation . . . ." *West v. General Motors Corp.*, 655 N.W.2d 468, 473 (Mich. 2003) (citations and footnote omitted); *see also Dortman*, 405 F.Supp.2d at 405 (relying on *West* to conclude that this requirement also applies to retaliation for filing a worker's compensation claim).

Here, Plaintiff can establish the first three elements of a claim of retaliation for exercising his rights under the WDCA. He filed a worker's compensation claim; Defendant knew that; and he suffered an adverse employment action when Defendant discharged him from employment. The only remaining element is whether a causal connection exists between the filing of his worker's compensation claim and the termination of his employment. Here, he suffered an injury and filed a claim on December 6, 2006. He returned from the injury to work on December 13, 2006. On December 14, 2006, he allegedly backed into a snowbank, which allegedly caused damage to a truck. On December 15, 2006, Defendant commenced an investigation into that incident and placed him on leave pending the outcome of that investigation. On December 20, 2006, Defendant ended his employment. Although a causal connection requires more than a showing of proximity in time, here the proximity in time serves as a basis for inferring a connection between Plaintiff's worker's

compensation claim and the end of his employment.

Also, he had returned to work from his injury for, at most, three days before he faced disciplinary action in the form of a leave, pending an investigation. Plaintiff had previously had six years without an accident and, at the first suggestion of an accident, Defendant placed Plaintiff on leave to investigate the circumstance. The Court must grant all inferences supported by the evidence in favor of Plaintiff. On the facts as presented, Plaintiff could prevail on a claim before a jury regarding his claim of retaliation for exercising his rights under the WDCA. Consequently, the Court will deny in part Defendant's motion for summary judgment, but only as to Plaintiff's WDCA claim.

IV.

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [dkt #17] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's counts I and II, claims of violations of ELCRA and the PWDCRA, are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 9, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 9, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS